February 9, 1978

## 78-8    MEMORANDUM FOR THE GENERAL COUNSEL, NATIONAL ENDOWMENT FOR THE HUMANITIES

### Arts and Artifacts Indemnity Act (20 U.S.C. § 972)—Statutory Limits—Dresden Exhibit

This responds to your request for our opinion concerning a disputed interpretation of the Arts and Artifacts Indemnity Act, 20 U.S.C. §§ 971-977 (1975 Supp.).

The Act provides for indemnification by the United States against loss or damage to certain works of art, artifacts, printed materials, and audio and video recorded materials made available for exhibit in the United States. Indemnification agreements under the Act are negotiated and entered into by the Federal Council on the Arts and Humanities on behalf of the United States. 20 U.S.C. § 972. Limits on the amounts of indemnity are set forth in 20 U.S.C. § 974(b)-(d), which reads as follows:

> (b) The aggregate of loss or damage covered by indemnity agreements made under this chapter shall not exceed $250,000,000 at any one time.

> (c) No indemnity agreement for a single exhibition shall cover loss or damage in excess of $50,000,000.

> (d) Coverage under this chapter shall only extend to loss or damage in excess of the first $15,000 of loss or damage resulting from a single exhibition.

The Council proposes to indemnify a planned East German exhibit called "The Splendor of Dresden" as follows: the first $50 million of loss or damage to the objects in the exhibit is to be covered by indemnification; however, only one-third of the total value of the porcelains and one-fourth of the total value of the panel paintings in the exhibit are to be included. The total value of the porcelains and the panel paintings is well below the $50 million statutory limit. The Council intends that the applicants, the National Gallery of Art and others, supplement the indemnification agreement with commercial insurance that would cover:

a. Claims for loss or damage over and above $50 million, to a limit of $18 million;

b. Claims for loss or damage to porcelains in excess of one-third of the aggregate value thereof; and

c. Claims for loss or damage to panel paintings in excess of one-fourth of the aggregate value thereof.

As we understand it, you believe that the Council lacks the statutory authority to enter into the agreement as it now stands. You state that the porcelains and the panel paintings, if indemnified, must be covered for their full values.[1] In explaining the proposed agreement to illustrate your contention, you argue that if the porcelains had a value of $3 million and all were destroyed, the indemnity to be paid by the United States would be limited to $1 million. In challenging the Council's authority, you assert that Congress intended that the agreements, within the range of statutory indemnification limits, must cover the full value of the items indemnified. Therefore, if the Council should adhere to its current offer to indemnify the porcelains for only $1 million, it could only include porcelains valued at $1 million. The result would be that the applicants for indemnity would be obligated to secure insurance on the remaining $2 million. Premiums on such a policy would be substantially higher than under the Council's proposal because the commercial insurance carrier would be responsible for the full value of the unindemnified porcelains, whereas in the Council's proposal the insurer would only be liable for damages in excess of $1 million. Thus, the insurer would have a $1 million buffer before its liability for loss attached.

The language of the Act does not expressly deal with this problem, and as we understand it, you do not contend otherwise. However, an argument can be made that 20 U.S.C. § 974(a) (1975 Supp.) supports your position. The provision states that:

Upon receipt of an application meeting the requirements of subsections (a) and (b) of section 973 of this title, the Council shall review the estimated value of the items for which coverage by an indemnity agreement is sought. *If the Council agrees with such estimated value, for the purposes of this chapter, the Council shall,* after approval of the application as provided in subsection (c) of section 973 of this title, *make an indemnity agreement.* [Emphasis added.]

Arguably, based on the above language, when the Council agrees with the estimated value of particular items, the indemnification must be in the amount of that value. However, in our opinion, a fair reading of the provision indicates that its purpose was merely to specify the procedures required before an agreement could be made. The emphasized language only provides that the

---

[1]Since these two classes of items are together valued at approximately $5 million, there is no problem with the statutory $50 million limit per exhibition.

Council and the applicant, among other things, must agree on the value of the covered items before the Council can enter into an indemnity agreement.

You find support for your view in the Act's legislative history. The specific language upon which you rely appears in S. Rept. No. 94-289, 94th Cong., lst sess. 4 (1975), which reads as follows:

> The amount of the indemnity agreement is set by the Federal Council on the Arts and the Humanities after reviewing the value of the items as set by the owner thereof. If the Council disagrees with the value set by the owner, and the owner disagrees with the value set by the Council, no indemnity agreement shall be issued. It is contemplated that the Council shall make liberal use of consultants, both with regard to the valuation and estimation of the article to be covered, and with regard to the packaging, transportation, and exhibition of that article.
>
> Nowhere in the legislation is there found a definition of loss. It is understood that a loss under the indemnity agreement covers partial damage to covered articles as well as loss or complete destruction.
>
> Should a claim of loss be filed under the indemnity agreement where there is a complete loss—where the item has been totally destroyed—the total amount shall be paid.

Almost identical language was used in H. Rept. No. 94-680, 94th Cong., lst sess. 8 (1975).

The Department of State and the National Gallery of Art both disagree with your position. They are of the opinion that the Council does have the authority to enter into the proposed agreement. The Department of State's argument, referring to the excerpt from the committee reports, is as follows:

> We note your reliance on certain language appearing in the Committee Reports on this legislation as a basis for a different conclusion. This language, we believe, just as it does not debar insuring, say, an 80 million dollar exhibit but limiting the amount of recovery to 50 million dollars, likewise does not, in our view, debar insuring three million dollars in value of porcelain objects but limiting the amount of recovery [under the indemnity agreement] to one million dollars. We consider that the language in the Reports is to be read along the lines put forward by Mr. Amory, General Counsel of the National Gallery of Art, namely, that if the Council agrees to cover the full value of objects, then of course if the objects are completely lost or destroyed, the total value should be paid. On the other hand, if the Council agrees to cover a three million dollar group of objects but limits itself to one million dollars in payments if the objects are completely lost or destroyed, the one million dollars would be the limit of liability. In our view Congress, by the wording of the Reports, did not mean to preclude this result. (January 25, 1978)

We concur. The excerpt, as we see it, does not suggest that when the Government enters into an indemnification agreement it must do so for the full value of the covered items. Its last paragraph states that:

> *Should a claim of loss be filed under the indemnity agreement* where there is a complete loss—where the item has been totally destroyed—the total amount shall be paid . . . . [Emphasis added.]

This statement assumes that full payment for any total loss would be made pursuant to the terms of the agreement when it so provided. It cannot be reasonably inferred from this that the amount of indemnification must always equal the value of the covered items.

The Department of State and the National Gallery, in asserting that the Council is empowered to enter into the proposed agreement, cite 20 U.S.C. § 971(a)(2) (1975 Supp.) as authority. That section provides that the Council is authorized to make indemnification agreements

> on such terms and conditions as the Council shall prescribe, by regulation, in order to achieve the purposes of this chapter and, consistent with such purposes, to protect the financial interest of the United States.

Pursuant to this provision the Council may set the terms and conditions of indemnification agreements. In the hearing on the Act, Senator Pell, one of its sponsors, stated:

> As I see this legislation functioning, the Federal Government would, for this purpose, become an agency under the Federal Government, with the authority to hire personnel. I would expect that the staff itself would be a very small one, whose initial function would simply be to issue the regulations necessary for implementation of the program. *The legislation has been broadly drafted to give the agency as wide a scope as possible within which to issue those regulations.*[2] [Emphasis added.]

It would appear that, pursuant to § 971(a)(2), the Council could, in the face of an unacceptable risk, refuse any indemnity coverage of certain items. Such a precaution would seem to be warranted in light of the Council's statutory duty "to protect the financial interest of the United States." Since the Council may refuse indemnification, or indemnify for the full value of covered items, it follows that its evaluation of the risks of a particular situation can justify an intermediate position under a limited indemnification agreement. Section 971(a)(2) provides that the Council is authorized to set such terms and conditions in indemnification agreements so as to achieve the purposes of the Act. The Council's proposal would result in substantially lower insurance premiums than under your interpretation. The Senate and House Reports'

---

[2]*Arts and Artifacts Indemnity Act: Joint Hearing on S. 1800 Before the Special Subcommittee on Arts and Humanities of the Senate Committee on Labor and Public Welfare, and the Select Subcommittee on Education of the House Committee on Education and Labor,* 94th Cong., 1st sess. 36 (1975).

primary theme is that the high cost of insurance unduly impedes the desirable practice of loaning and receiving artistic treasures. The Act was intended to meet this problem. Thus, the Council's proposal would further the Act's policy of alleviating the problems caused by high insurance rates. In addition, as the Department of State indicates, the Council's approach of indemnifying in certain cases for less than the value of the covered items

> . . . protects the 250 million dollar limitation on the obligational authority from depletion and permits the stretching of the 250 million dollar limitation to cover more foreign exhibits.

For these reasons we believe that the Council's authority to make the disputed agreement is included in its broad powers under the Act.

Finally, we think it noteworthy that the proposed agreement entails no realistic possibility of loss to any concerned party. The lender of the covered items receives the same degree of protection as it would under your proposal. The Council and the applicants would actually benefit. The Council can encourage the exhibition of valuable items, while limiting the exposure of the United States to an amount less than the items' full value; and, the applicants' insurance costs would be reduced, thus enhancing the possibility that further exhibitions would result. Moreover, the public would also benefit by such a result.

For the foregoing reasons it is our opinion that the Council is empowered to enter into the proposed indemnification agreement.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
